

**SIGNED this 12 day of October, 2007.**

_____

                                      **R. Thomas Stinnett**
                          **UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

In re:                                                    Case No. 04-13285
                                                           Chapter 13

NORA LYNN NEWELL,

       Debtor.

Appearances:        Mark T. Young, Mark T. Young & Associates, Chattanooga, Tennessee, for
                         the debtor, Nora Lynn Newell

                         Richard P. Jahn, Jr., Chattanooga, Tennessee, for Bill Phillips, Kim Terry,
                         and Sue Reynolds

R. Thomas Stinnett
United States Bankruptcy Judge

**MEMORANDUM**

        Three individual creditors, the Internal Revenue Service (IRS), and the chapter 13 trustee objected to confirmation of the debtor's third modified chapter 13 plan. The Internal Revenue Service withdrew its objection based on an agreed order setting out how the chapter 13 plan must deal with its claims. The chapter 13 trustee objected on the ground that the debtor has

failed to make her payments regularly during the chapter 13 case, but he withdrew the objection at the hearing since the debtor had resumed regular payments. This leaves Bill Phillips, Kim Terry, and Sue Reynolds as the objecting creditors. They argue that the chapter 13 plan was not proposed in good faith and is not the debtor's best effort. 11 U.S.C. § 1325(a)(3) (2005).

The debtor testified that she worked as a securities dealer during the 1990's. She was employed by several firms, including American Express. She admitted that in the middle 1990's she talked some clients into lending her money upon her promise of a 15% return. The debtor actually had no investment ventures of her own. The debtor would sometimes borrow from new or different clients to pay back other clients who had lent her money. She continued this practice into the late 1990's.

Phillips, Terry, and Reynolds lent the debtor money after the year 2000. The debtor told Phillips and Terry that she was investing in property in the St. Elmo area of Chattanooga, but she never did. She did not pay them back before she filed her chapter 7 case in December 2003. In the chapter 7 case, the debtor listed over $400,000 in debts to clients.

The debtor also had not paid federal income taxes since 1989. In 1996 the IRS had filed tax liens against her property to collect $165,000 for the years 1989 through 1995. The debtor filed tax returns for 1989 through 1996 before filing the chapter 7 case, but she had not yet filed tax returns for 1997–2002.

In the chapter 7 case the debtor scheduled 4 parcels of real property: (1) a duplex on Alabama Avenue; (2) the debtor's residence also on Alabama Avenue; (3) a one-half interest in a house and lot on Scenic Highway; (4) a house and acreage on Birchwood Pike. All four parcels of property were subject to liens other than the IRS lien. A former client named Finley Wilhoite had a judgment lien against all the debtor's property in Hamilton County, which included these four parcels.

Phillips, Terry and Reynolds were planning to file complaints in the chapter 7 case

asserting that their debts should be excepted from discharge because they arose from the debtor's wrongdoing. The debtor agreed, however, that Phillips and Terry would have non-dischargeable debt of $90,000 and Reynolds would have a non-dischargeable debt of $25,000. The court entered the agreed judgments in favor of Phillips, Terry and Reynolds holding that those amounts were excepted from discharge under § 523(a)(2) of the bankruptcy code. It applies to debts arising from the debtor's fraud, false pretenses, or false representations. 11 U.S.C. § 523(a)(2) (2005). The debtor received a discharge of all her other debts that were dischargeable, including the debts to her other clients since they did not file complaints to except their debts from discharge.

Shortly after the court entered the judgments for the objecting creditors, the debtor filed this chapter 13 case. Before the debtor filed the chapter 13 case, she had filed her income tax returns for 1997 through 2003. The schedules in the chapter 13 case showed that she owed only about $15,000 in taxes for the years 2000, 2001, and 2002.

The debtor's original chapter 13 plan provided that she would make direct payments to the chapter 13 trustee of $230 per week. It provided that the IRS would have a secured claim of $4,100. As to unsecured creditors, including Phillips, Terry, and Reynolds, the original plan provided that they would be paid 10% of their claims.

Less than two weeks after filing the chapter 13 case, the debtor filed her first modified plan. It changed her payments to $370.00 every two weeks (bi-weekly). The debtor's attorney stated that this modification was needed to correct a mistake made in his office since the original plan should have provided for payments of $370 bi-weekly instead of $230 weekly.

The chapter 13 trustee obtained an appraisal of the real property. It estimated that the debtor had $2,000 equity in the Scenic Highway property and more than $25,000 equity in the Birchwood Pike property. The appraisal showed no equity in the debtor's residence and the duplex on Alabama Avenue.

Phillips, Terry and Reynolds filed objections to confirmation of the first modified plan.

The IRS and the chapter 13 trustee also filed objections.

Believing there was no equity in the debtor's real property, the IRS released its liens about a month after the debtor filed the chapter 13 case. About six weeks later, the IRS filed a motion asking the court to allow it to reinstate the liens.

A hearing on the objections to confirmation was postponed until after a decision on the IRS's motion to reinstate its liens. Several months later the court entered an order allowing the IRS to reinstate its liens.

In the meantime, the holder of a mortgage on the Birchwood Pike property had foreclosed without obtaining an order granting relief from the automatic stay. 11 U.S.C. § 362(a) (2005).

The debtor then filed a second modified plan. It provided for surrender to the secured creditor of the duplex on Alabama Avenue. The second modified plan also provided that the IRS would have an allowed secured claim of $8,292 to be paid under the plan with 6% interest and with monthly payments of $170. Finally, the second modified plan proposed that the unsecured creditors, including Phillips, Terry and Reynolds, would not receive a 10% payment on their debts but would receive a total of $2,000 to be shared pro rata.

The appraisal obtained by the chapter 13 trustee caused him to believe that the equity in the Birchwood Pike property was sufficient to pay part of the IRS's secured claim. He brought suit against the mortgage holder that had foreclosed on the property during the chapter 13 case.

The chapter 13 trustee recovered $21,750 from that litigation. After paying the trustee's litigation expenses, the money was used for full payment of the debt to Finley Wilhoite that was secured by a judgment lien on the property. The remainder of the money, $8,638.01, was used for partial payment of the IRS's claim that was secured by a tax lien on the property.

During the chapter 13 case the debtor lost or surrendered her license as a securities

dealer after the National Association of Securities Dealers took action against her.

The debtor filed a third modified plan in May 2007. The debtor and the IRS subsequently reached an agreement settling the IRS's objection to confirmation. It provides that the IRS will have a priority claim of $13,762.32, which must be paid in full under the plan, and an allowed secured claim of $18,097.30 to be paid at $460 per month with 8% interest. The allowed secured claim was paid $8,638.01 from the litigation proceeds. The parties do not exactly agree on the amount required to pay the balance with interest as provided in the order. The debtor's attorney calculated $11,800, which is a larger amount than what was calculated by the objecting creditors.

The last amended claim filed by the IRS totaled $148,359.55 including the priority claim. The result is that the IRS should have a general unsecured claim between $116,000 and $117,000. The unsecured claims of Phillips, Terry, and Reynolds total $115,000. The third modified plan provides that the unsecured creditors – including Phillips, Terry, Reynolds, and the IRS – will share $2,000 to be distributed pro rata.

The debtor now owns only one parcel of real property, her residence on Alabama Avenue. The third modified plan provides for maintenance payments of $244 per month and an arrearage payment of $60 per month. The original arrearage claim totaled about $2,500, but it should have been reduced by payments before confirmation as required by an order for adequate protection. Likewise, the secured claim should have been reduced since the filing of this case.

The debtor's amended schedules show monthly income of $1,985 and expenses of $603. The income total is based on *gross* income of $1,746.79 per month from the United States Postal Service and a second job paying $120 per week. The third modified plan provides for payments of $625 every two weeks for a monthly total of $1,354.16. The debtor's earnings of $120 per week from the second job works out to about $520 per month.

The debtor's attorney has reduced his fee request to $1,000.

According to the objecting creditors, the debtor's latest amended schedules show monthly living expenses of $200 for utilities, $200 for food, $180 for car expense, and $50 for property tax – making a total of $630.00. The debtor's testimony at the hearing revealed that the IRS had demanded estimated tax payments based on her earnings from the second job. The objecting creditors took the amount to be $131 per month, but according to the debtor's brief, the IRS's order requires $292.29 per quarter, which works out to $97.42 per month. Thus, the debtor's living expenses should total about $720 per month.

The parties agree that the plan will barely pay out, if at all. The objecting creditors contend it *may* come up short on paying both the trustee's commission and the fee of the debtor's attorney. The calculations by the debtor's attorney show that the plan will have just enough to pay all claims and administrative expenses, including his fee. The parties also agree that the plan requires austere living by the debtor with little room for unexpected expenses.

The debtor testified that she filed this chapter 13 case because she was overwhelmed. She had agreed to the large non-dischargeable judgments for Phillips and Terry and Reynolds, and she knew that she owed or would owe the IRS a large amount. She admitted that Phillips, Terry, and Reynolds were not pressing for payment and had not taken any actions to collect. She also did not try to make any payment arrangements. As to the IRS, she testified that it had not taken any actions to collect other than filing the tax liens against her property.

The debtor's original statement of financial affairs in the chapter 13 case showed income of $2,700 per month as a mortgage loan specialist. This income should have allowed the debtor to make the payments of $370 bi-weekly, but she fell far behind. She explained that she did not have the money to make the payments because she did not make $2,700 per month. She testified that since she was new to the job of closing mortgages, she estimated what she would make on the average, and though her monthly income was up and down, she did not average $2,700 per month. Exhibit 2 is the chapter 13 trustee's record of receipts. It shows that the debtor

began making payments in June 2004 and continued them somewhat regularly until October 2005, but then she made no payments until the end of July 2006, and this was followed by another gap until February 2007.

The debtor did not deny that her own wrongdoing gave rise to the debts to Phillips, Terry, and Reynolds.

## DISCUSSION

The objecting creditors assert that the third modified plan was not filed in good faith. 11 U.S.C. § 1325(a)(3) (2005). The court of appeals for this circuit has set out some factors to be considered in deciding whether a chapter 13 plan was filed in good faith. *Hardin v. Caldwell, (In re Caldwell)*, 851 F.2d 852 (6th Cir. 1988), *appeal after remand*, 895 F.2d 1123 (6th Cir. 1990). The court need not list the factors since a general discussion will suffice.

The objecting creditors' argument can be summarized as follows. Phillips, Terry, and Reynolds were clients of the debtor and trusted her as their financial advisor, but she intentionally misled them into lending her money, and her dishonesty created the debts to them that are being dealt with in her chapter 13 case. The debtor engaged in the same kind of dishonest dealing with numerous other clients over a long period of time. During the same period, she was not filing federal income tax returns or was not paying federal income taxes. The debtor filed a chapter 7 bankruptcy case and agreed that debts to Phillips, Terry, and Reynolds would not be discharged in the case. But then, the debtor almost immediately filed this chapter 13 case because completion of a confirmed plan would result in discharge of the debts to Phillips, Terry, and Reynolds. 11 U.S.C. § 1328(a)(2) (2005). When she filed the chapter 13 case, Phillips, Terry, and Reynolds were not pressing the debtor for payment. The IRS had filed tax liens against her property, but it was not otherwise pressing her for payment. Her statement of financial affairs in the chapter 13 case was misleading by stating her income as $2,700 per month. She never made that much as a mortgage loan specialist, and as a result, she failed to keep up with the modest regular payments to the

chapter 13 trustee of $370 every two weeks. By the time of the hearing on the third modified plan, she was about $11,000 behind. This was about three years after she filed the chapter 13 case. Though the debtor can no longer work as a securities dealer, she has been and continues to be employed at jobs below her earning capacity. She has the intelligence to obtain better paying jobs that will allow her to pay more to the objecting creditors and the IRS. The third modified plan is based on the debtor's doubtful ability to maintain very low living expenses. It is a desperate attempt by the debtor to discharge the debts to Phillips, Terry, and Reynolds by paying them a pittance before the time runs out in this chapter 13 case because a new chapter 13 case, filed after the 2005 amendments, will not allow her to discharge the debts. 11 U.S.C. § 1328(a)(2).

This case is governed by chapter 13 as it existed before the 2005 amendments. Those amendments generally apply to cases filed on or after October 17, 2005. Pub. L. No. 109-8, § 1501, 119 Stat. 23, 216 (2005). The statutes provided that confirmation and completion of a plan would discharge debts that arose from the debtor's wrongdoing and could be excepted from discharge in a chapter 7 case. 11 U.S.C. § 1328(a) (2005). Congress obviously decided that a debtor should be able to discharge debts resulting from her dishonesty by completing a chapter 13 plan. This rule of law cannot be ignored in deciding whether a plan was proposed in good faith.

The *Caldwell* case presents an example of a debtor who refused to recognize the justness of the creditors' non-dischargeable judgment against him, who filed his bankruptcy cases to frustrate collection by the judgment creditors, and whose actions in the bankruptcy cases were consistent with that intent. The debtor had substantial income and ability to pay but set out to avoid paying the judgment or to pay as little as possible by taking advantage of the bankruptcy law.

That kind of bad faith case is fairly common. The clearest example involves a debtor who does not give honest information in the schedules and statement of financial affairs, especially if the dishonesty is aimed at preserving property or income for the debtor and preventing it from being used to pay creditors. *See Mills v. Rabbitt*, 145 F.3d 1332, 1998 WL 228152 (6th Cir. 1998)

(Table, unreported); *In re Terry*, 279 B.R. 240 (Bankr. W. D. Ark. 2002). Honesty and full disclosure in the chapter 13 case are hallmarks of good faith. In re Williams, 338 B.R. 678 (Bankr. E. D. Va. 2004).

In this case the debtor's original statement of financial affairs overstated her monthly income. The debtor explained that she was new to the job and did not know how much she would make, which obviously depended on the number of mortgage closings she could do in the future. There is no evidence that the debtor was untruthful when she testified that she could not make the chapter 13 payments at times because she did not make enough money. Likewise, there is no evidence of extravagant living by the debtor or that the debtor's living expenses were too high during the periods when she failed to make the chapter 13 payments.

A debtor may overstate expected income as a means of delaying creditors because it suggests that a confirmable plan is possible. This kind of dishonest overstatement is likely to be discovered at the meeting of creditors. If not, it is likely to be found out not too long after confirmation when the payments fail to come in. If there is a delay between the meeting of creditors and confirmation of a plan, the overstatement is unlikely to buy the debtor much time since the debtor must make the proposed payments before confirmation. 11 U.S.C. § 1326(a) (2005). In this case, most of the debtor's missed payments came during a 9 month period that did not begin until about 16 months after she began making the payments. In light of these facts, and having heard the debtor's testimony and judged her credibility, the court concludes that she did not intentionally overstate her future income for the purpose of misleading and frustrating her creditors or the chapter 13 trustee. *In re Roberts*, 339 B.R. 807 (Bankr. M. D. Ga. 2006).

The long delays in this case were litigation delays. They did not result from the debtor's failure to cooperate or any other wrongdoing in the bankruptcy case. First, the IRS asked to be allowed to reinstate its tax liens, and then the chapter 13 trustee filed a complaint against a mortgage holder who foreclosed on the debtor's most valuable real property without obtaining relief

from the automatic stay.

The debtor also had an explanation for filing the chapter 13 case quickly after agreeing that Phillips, Terry, and Reynolds would have large non-dischargeable debts. She saw her situation as hopeless. She owed the objecting creditors large non-dischargeable debts, and she knew that she owed large debts to the IRS. Even if the objecting creditors and the IRS were not pressing for immediate payment, the debtor had to consider whether she could ever pay a significant amount on the debts and whether she wanted to endure years of having the debts hanging over her head. The objecting creditors and the IRS might consider years of worry and making small payments on the debts to be a just punishment for the debtor's dishonest actions before bankruptcy. On the other hand, chapter 13 allows a debtor to discharge such debts by completing a confirmed plan.

The debtor's financial prospects must also be part of this discussion. The objecting creditors contend the debtor can obtain jobs that pay more than what she has been making. This can be a difficult argument to prove unless the debtor is obviously under-employed for the purpose of avoiding payment of all debts or certain debts. The debtor's dishonest actions before bankruptcy led to the loss of her license as a securities dealer and should disqualify her from many higher paying jobs in positions of trust. She may be able to find better paying jobs at some time in the future, but the evidence does not show that it is likely to be any time soon. The debtor seems to be stuck now in lower paying jobs that do not fully utilize her skills or knowledge, but she has not chosen to work in those jobs for the purpose of preventing payment of her debts to the IRS and the objecting creditors.

If a debtor shows almost no concern for paying a debt or even a contemptuous disregard of the debt, the debtor's attitude indicates bad faith. This reasoning applies more strongly, however, when the debtor has the ability to pay a meaningful amount on the debt. Consider Judge Cook's decision in *Derryberry*. As a result of the debtor's criminal actions, the creditor obtained a

large judgment against her. The judgment debt would have been non-dischargeable if the debtor had filed a chapter 7 case. When the debtor was released from prison, she eventually obtained steady employment, and about the same time she inherited $22,400. She neither made payments on the large judgment debt nor attempted to make any payment arrangements with the creditor. She ignored the judgment debt though she had the ability to make a significant payment. *In re Derryberry*, 367 B.R. 616 (Bankr. E. D. Tenn. 2007). The sixth circuit's decision in *Caldwell* also involved a debtor who always had the ability to pay a significant amount on the debt but continued to dispute the justness of the debt and used his bankruptcy cases as a means of avoiding payment. *Hardin v. Caldwell, (In re Caldwell)*, 851 F.2d 852 (6th Cir. 1988), *appeal after remand*, 895 F.2d 1123 (6th Cir. 1990). The debtor in this case does not have the ability to pay a significant amount on her unsecured debts now, and as far as the court can tell, her ability to pay is not likely to improve significantly in the near future.

The courts have stated that the question of good faith deals with whether the plan was proposed primarily as a method of avoiding payment of the debt or as a sincere attempt at payment consistent with the debtor's resources. *Hardin v. Caldwell, (In re Caldwell)*, 851 F.2d 852 (6th Cir. 1988), *appeal after remand*, 895 F.2d 1123 (6th Cir. 1990); In re Sexton, 230 B.R. 346 (Bankr. E. D. Tenn. 1999).  Of course, any plan that provides for less than full payment might be criticized as merely a method of avoiding payment. Certainly it is a method of allowing the debtor to escape full liability. That kind of criticism can easily be applied in this case because the plan provides for a minuscule percentage payment on unsecured debts, some of which would be non-dischargeable in a chapter 7 case. There may be a fine line between the sincere intent to pay according to the debtor's financial ability and the intent to use the law to defy, or even to inflict additional injustice on, a creditor who has already been harmed by the debtor's wrongdoing. The debtor in this case admitted her wrongdoing and did not reveal any intent to use her chapter 13 case to continue defying or harming the objecting creditors. The court concludes that the debtor did

not propose the third modified plan with the kind of wrongful intent that amounts to bad faith.

Accordingly, the objection to confirmation filed on behalf of Phillips, Terry, and Reynolds is overruled. The Chapter 13 Trustee is directed to submit an order in standard form confirming the third modified plan with the plan attached.

This memorandum constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 9014, 7052.

# # #